# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

ALVIN JEROME WALTON     §
    §
v.     §     **No. A-10-CV-844 SS**
    §
CLAUDE MAYE, Warden, FCI Bastrop     §

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:     THE HONORABLE SAM SPARKS
         UNITED STATES DISTRICT JUDGE

Before the Court are Petitioner Alvin Walton's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Clerk's Doc. No. 1) with Memorandum in Support (Clerk's Doc. No. 2); Respondent's Response to Petition for Writ of Habeas Corpus (Clerk's Doc. No. 11); Petitioner's Reply to Respondent's Response (Clerk's Doc. No. 13); and Respondent's Sur-Reply (Clerk's Doc. No. 15). The Magistrate Judge submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. General Background

On October 21, 2003, Alvin Jerome Walton was arrested in Tennessee after local authorities found cocaine in his car. He was released on pre-trial bond on November 6, 2003, and returned to Houston. He remained on bond until February 23, 2005, when he was arrested by federal authorities on federal criminal charges pending in Philadelphia, Pennsylvania. The next day, Walton made an initial appearance before a magistrate judge in the Southern District of Texas, and he was ordered detained pending his trial in Philadelphia. He was then transferred from the Southern District of Texas to the Eastern District of Pennsylvania. Almost ten months later, on January 2, 2006, while

still awaiting trial on the Philadelphia case, he was transferred by the Marshal's Service to the Middle District of Tennessee to stand trial on federal charges that had been filed arising out of the stop in 2003. Within weeks of arriving in Tennessee, Walton pled guilty to possession with intent to distribute five or more kilograms of cocaine, and on January 30, 2006, he was sentenced to a 120-month term of imprisonment. He was then returned to Philadelphia to address the charge pending in that district. More than two years later, Walton went to trial in the Philadelphia case, a jury found him guilty of three drug charges, and on December 3, 2008, the District Judge sentenced him to a 180-month sentence to run concurrently with "any undischarged term of imprisonment." Thereafter, Walton was transferred to the custody of the Bureau of Prisons, which received him on March 17, 2009.[1]

## II.    Issue Presented

The issue raised in Walton's petition is the proper aggregation of these two sentences, and how the time prior to his transfer to the BOP should be treated. The BOP ("BOP" or "Government") takes the position that Walton started serving his first sentence—the120 month sentence for the Tennessee case—immediately upon that sentence being imposed (January 30, 2006). Thus, they treat the time from January 30, 2006, through the imposition of the second sentence (December 3, 2008), as time Walton was serving on the 120 month sentence. Similarly, the time Walton had spent in custody prior to January 30, 2006 (a total of 358 days), was credited to the 120 month sentence as pretrial custody credit. The Government thus asserts that when he was sentenced on the second

---

[1] *See* Attachment I to the Declaration of Martin Joseph Sweaney (Clerk's Doc. No. 11) (listing the "date committed" for each of the two convictions as March 17, 2009); and Attachment E at p. 2 (stating that Walton was delivered to FCI Bastrop on March 17, 2009).

case, Walton had served 34 months and 3 days[2] on the second case, and had also earned 358 days of pretrial custody credit toward that sentence. To state it in the opposite manner, in the Government's view, on the second sentencing date the undischarged portion of the 120 month sentence was 76 months and four days. When the second sentence was imposed, the BOP contends that the remainder of the first sentence (76 months and four days) aggregated with the second sentence (180 months). As the longer sentence, the 180 month sentence controls, and thus Walton's release date is 180 months from December 3, 2008.

Walton contends that this approach is flawed because he did not begin serving his first sentence on the date he was sentenced. Rather, he argues that because he was immediately transferred after sentencing from the Middle District of Tennessee to the Eastern District of Pennsylvania—and not into the custody of the BOP—he went into pretrial detention status on the Pennsylvania case. He argues, therefore, that he is due 358 days of pretrial custody credit on the Tennessee case, and 34 months and three days pretrial custody credit on the Pennsylvania case—he did not begin to serve either sentence until he was being held awaiting a designation to a BOP institution. This would mean that at the time Walton began serving the sentences, he had to concurrently serve: (1) a 120 month sentence with 358 days credit; and (2) a 180 month sentence with 34 months and 3 days of credit. Once again, as the longer sentence, the 180 month sentence controls, and thus Walton contends that his release date is 145 months and 27 days from December 3, 2008.

_____

[2]The time from January 30, 2006, to December 3, 2008.

3

## II.      Standard of Review

The essence of a petition for writ of habeas corpus under 28 U.S.C. § 2241 is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Thus, a § 2241 petition attacks the manner in which a prisoner's sentence is carried out or the prison authorities' determination of its duration. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000). A petition for writ of habeas corpus may only be filed in the district where the prisoner is incarcerated. *Id*.

Because Walton filed his habeas petition pro se, his "'complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)), and liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se pleadings to less stringent standards than formal pleadings drafted by lawyers); *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997). Nevertheless, pro se litigants are still required to provide sufficient facts to support their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).

## III.      Analysis

The outcome of this dispute is dictated by the terms of 18 U.S.C. § 3585. Thus, the Court's analysis will start with the plain language of that statute, which states:

**§ 3585 Calculation of a term of imprisonment**

(a) Commencement of Sentence.— A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for Prior Custody.— A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585. Under § 3585's definition of "commencement," Walton did not commence serving his first sentence until he was "received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." As noted in the factual section, the BOP has taken the position that Walton started serving his sentence on the Tennessee case as soon as he was sentenced. In an ordinary case, where only one charge is pending, and where the defendant is in custody at sentencing, the BOP's approach would be correct. In that situation, the U.S. Marshall would hold the defendant until the BOP designated the institution in which the defendant is to serve his sentence, and then the U.S. Marshall would transport him to that facility. From sentencing until his transportation to the BOP facility, he would be "in custody awaiting transportation to . . . the official detention facility" designated by the BOP.

But that is not what happened here. Rather, immediately upon the sentence being imposed in the Tennessee case, Walton was transferred to Philadelphia to stand trial on the charges pending there. The BOP offers no evidence that while there Walton was "awaiting transportation" to the BOP facility in which he was going to serve the Tennessee sentence. Instead, all of the evidence before the Court demonstrates that Walton was in custody in Philadelphia awaiting trial on the charges *there*. There is also no evidence that during Walton's detention in Philadelphia the BOP designated an institution in which Walton was to serve the Tennessee sentence, nor is there any evidence that Walton was "awaiting transportation" to the BOP for the 34 months and 3 days he

spent detained in Philadelphia.[3]  Here it was almost three years between the two sentences, and

without evidence of any intention on the Government's part to transport Walton to the BOP, there

is no basis for the Court to conclude that Walton's Tennessee sentence "commenced" (as that term

is defined in § 3585(a)) at any point during the time he was being detained before sentencing in

Philadelphia.  Rather, the evidence indicates that *both* sentences commenced on the same day—the

day Walton was sentenced in Philadelphia, December 3, 2008.  Only then was Walton in custody

"awaiting transportation" to the BOP-designated facility to serve both sentences.

The question thus becomes how to treat the 34 months and 3 days Walton spent in custody

in Philadelphia after the sentencing in the Tennessee case.[4]  As just explained, the time cannot be

treated as time served toward the Tennessee sentence, as that sentence had not yet "commenced."

The other alternative is to treat the time as "credit for prior custody" due under § 3585(b).  Section

3585(b) creates a multi-factored test to determine when a sentence may be offset by time in prior

custody:

- the time must have been spent in "official detention" prior to the date the sentence commenced

- the prior custody must have occurred either as a result of:

    - the offense for which the sentence was imposed, or

    - any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed, and

- that time has not been credited against another sentence.

_____

[3]Indeed, in the Court's experience, it usually takes the BOP less than a month after sentencing to designate the institution in which a defendant is to serve his sentence.

[4]There is no dispute that the 358 days Walton spent in custody before his sentencing in the Tennessee case is creditable toward the Tennessee sentence, so that time is not in issue here.

*See* 18 U.S.C. § 3585(b). Here, Walton spent the 34 months and 3 days in custody in official detention, and that detention was prior to date either sentence commenced (as both sentences commenced on December 3, 2008), so the first factor is satisfied for both sentences. Next, the custody could not have been "as a result of" the Tennessee offense. This is so because Walton had already been convicted and sentenced on the Tennessee case, so that time spent in custody after that sentencing could only have been "the result of" the Tennessee case if the sentence was "commencing" at that time. But as already explained above, that sentence did not commence then, but instead commenced on December 3, 2008.

This means that the only way the 34 months and 3 days is creditable toward the Tennessee sentence is if that custody was the result of another charge for which Walton was arrested after the commission of the Tennessee offense, and the time has not been credited toward another sentence. On the first half of that question, it appears quite clear that the 34 months and 3 days Walton was in custody was in fact due to the Philadelphia case, a case in which Walton was arrested after the commission of the Tennessee offense. On the second part of this analysis, however, it also appears clear that the 34 months and 3 days is properly credited toward the Philadelphia case, making that time ineligible to act as a credit toward the Tennessee sentence. Thus, the 34 months and 3 days is not available as a pre-custody credit on the Tennessee case. This of course only makes sense. It would be odd indeed if one received pretrial credit for time spent in custody after sentencing. As Justice Ginsburg (while sitting on the D.C. Circuit) put it, "it is artificial to maintain that [post-sentence] custody nonetheless retains its preconviction character, that it remains conditional, unsettled, still dependent upon . . . a trial court's eventual disposition of other charges not yet adjudicated." *Shevly v. Whitfield*, 718 F.2d 441, 444 (D.C. Cir. 1983) (footnote omitted).

On the other hand, the time from January 30, 2006, to December 3, 2008, quite easily meets the criteria for pre-sentence credit toward the Philadelphia case. As already demonstrated, the time meets the first criterion of § 3585(b), as it was spent in official detention before Walton's service of the Philadelphia sentence commenced. Further, in every sense of the phrase, the 34-plus months of custody was "as a result of" the Philadelphia case. Walton was transferred to Philadelphia to stand trial on the Philadelphia charge. Indeed, his detention in the first place, which was ordered by a magistrate judge in Houston, stemmed from Walton's arrest on the Philadelphia case, as he had been released on bond on the Tennessee charge. But for the Philadelphia charge, he would have been transferred to the BOP to serve the Tennessee sentence. Accordingly, the plain language of § 3585(b) indicates that the 34 months and 3 days that Walton was in custody between the sentencings in the two cases is time that should be credited against the Philadelphia sentence.

None of the cases that the Government cites supports a contrary result. The majority of the cited cases are for propositions not in dispute (sentences cannot be run perfectly concurrently, but rather only concurrent to the remaining sentence on the first of the two charges), or are non-precedential opinions that only lay out bare facts with no legal analysis. In the majority of the cases there was no question regarding whether the first sentence had "commenced," as there is here. To be fair, the majority of the cases that address these issues address them in a context quite different than that presented here—a federal sentence ordered to run concurrently with a state sentence. As the Government notes, those cases present issues not in play in a case like this one, where both sentences were imposed by federal courts. For this reason, those cases are not helpful to the Court's analysis here.

The two cases the Government cites that have similar facts are *Mezheritsky v. Duncan*, 2010 WL 3834657 (D. Ariz. May 25, 2010), and *Hicks v. Mitchell*, 2010 WL 2721276 (D. S.C. June 18,

2010).  In *Mezheritsky*, the defendant was indicted on two separate charges in the same district (the

Central District of California).  The first case involved alien smuggling charges, and during the

execution of a search warrant at the time of the first arrest, authorities located a firearm.  Thus, while

the charges on the first case were pending, and while the defendant was being detained on those

charges, a second indictment was handed down against the defendant, charging him with being a

felon in possession of firearms.  Before the first case was disposed of, the defendant pled guilty to

the weapons charges, and on January 13, 2003, he was sentenced to 24 months in that case.  He then

went to trial on the alien smuggling case, and was found guilty on several counts of that indictment.

On March 3, 2003, he was sentenced in that case to 210 months.  The issue presented in *Mezheritsky*

was whether he was entitled to credit toward the second, 210 month sentence, for the time between

January 13, 2003, and March 13, 2003.  Mezheritsky contended that he should receive credit for that

time as pretrial custody time on the alien smuggling case, as he was awaiting trial in that case after

he was sentenced on the gun charge.  The magistrate judge in that case found that he was not entitled

to that credit.  He did not, however, consider the issue presented here, which is whether the first-

imposed sentence began to run on the date of its imposition.  Rather, the opinion states that "[t]here

is no dispute that Petitioner began serving his First Sentence on January 13, 2003."  *Mezheritsky*,

2010 WL 3834657 at *5.  Because that issue was not in dispute, *Mezheritsky* does not address the

question that this case poses.[5]

The facts of *Hicks v. Mitchell*, are much closer to those here.  There, the defendant was

sentenced on March 3, 1998, in the Middle District of Florida to 70 months imprisonment.  After

---

[5]Moreover, the fact that the defendant in *Mezheritsky* was facing two cases in the same
district also distinguishes the case, in that he was never moved from the Central District of California
to another district, and thus it would be at least arguable there that he was in fact awaiting
designation to the BOP while he remained in custody in that district post-sentencing.

sentencing, Hicks was transferred to the Southern District of West Virginia, where on December 7, 1998, he was sentenced to 180 months imprisonment, concurrent with the 70 month sentence. The BOP initially calculated his sentence as a 180 month sentence commencing on March 3, 1998 (the date of the first sentencing), but later changed the computation. In the subsequent computation, the BOP concluded that the first sentence of 70 months began on March 3, 1998, but the 180 month sentence did not commence until December 7, 1998. As the two sentences were run concurrently, the 180 month sentence governed when they were aggregated, and thus Hicks' release date was 180 months from the date of the second sentence.

Hicks filed a habeas petition in the District of South Carolina challenging the BOP's time calculation. The magistrate judge there determined that the BOP correctly determined the commencement dates and Hicks was not entitled to pre-sentence custody credit from March 3, 1998, until December 7, 1998, because that time counted against his 70 month sentence. The basis of this decision was that, in the court's opinion, beginning on March 3, 1998, "Hicks was in federal custody awaiting transportation to the facility where he would ultimately serve his sentence." *Id.* at *4. The court did not explain the factual basis of its conclusion that Hicks spent nine months "awaiting transportation" while awaiting trial in another district. Moreover, *Hicks* relies upon a Tenth Circuit opinion, *Mitchell v. Story*, 1995 WL 610879 (10th Cir. Oct. 18, 1995), when in fact that decision supports the opposite conclusion. In that case, Mitchell challenged his sentence calculation after he was sentenced to 57 months on February 12, 1990, and to 207 months concurrent with his 57 month sentence on December 13, 1990. In Mitchell's case, the BOP calculated his 207 month sentence starting on February 12, 1990, so he *did* receive credit against his second sentence for the time spent in custody after the first sentence was handed down. *Id.* at *2. This is the opposite result of *Hicks*. For these reasons, the *Hicks* decision is not persuasive, and the Court declines to follow it.

In the end, this case turns on a factual issue, one made relevant by the plain language of the applicable statute: when was Walton "received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served"? *See* 18 U.S.C. § 3585(a). As already discussed, the only evidence available in this record on that point reflects that Walton was transferred from Tennessee to Philadelphia not to "await transport" to the BOP, but rather to stand trial on the charges in Philadelphia. Congress has described in plain language in § 3585(a) when a sentence commences, and under that language Walton's sentence on the Tennessee charge did not commence until December 3, 2008. While the BOP argues that his sentence commenced on January 30, 2006, it does not base that conclusion on the statute which governs the issue. When that statute is applied, there is no factual basis for the BOP's conclusion that Walton began serving his sentence on January 30, 2006. Thus. the BOP's position is in direct conflict with 18 U.S.C. § 3585.

In summary, the Court concludes that Walton is entitled to have the 34 months and 3 days between January 30, 2006, and December 3, 2008 treated as pre-custody credit applied to the 180 month sentence that commenced on December 3, 2008, and thus that the BOP's conclusion to the contrary is an incorrect application of 18 U.S.C. § 3585. ACCORDINGLY, the undersigned RECOMMENDS that the petition be GRANTED, and the District Court direct that the Bureau of Prisons recalculate the Petitioner's release date in accordance with this opinion.

SIGNED this 5th day of August, 2011.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE